FILED & ENTERED

DEC 14 2012

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY sumlin    DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Sonya D. International, Inc.,<br><br>　　　　　　　　　　Debtor,<br><br>―――――――――――――――――<br><br>In re:<br><br>Hazlaha, LLC,<br><br>　　　　　　　　　　Debtor. | Case No.: 2:12-bk-25456-NB<br><br>Jointly Administered with<br>Case No.: 2:12-bk-25458-NB<br><br>CHAPTER 11<br><br>**AMENDED MEMORANDUM DECISION REGARDING EMPLOYMENT OF ENTERPRISE COUNSEL GROUP ALC**<br><br>Date:　　December 6, 2012<br>Time:　　4:00 PM<br>Courtroom: 1545 |

　　　The above-captioned debtors, Sonya D. International, Inc. ("SDI") and Hazlaha, LLC ("Hazlaha"), have general bankruptcy counsel and now seek to employ additional counsel, Enterprise Counsel Group ALC ("Enterprise"), to represent them ongoing litigation known as the "Constructive Trust Litigation."[1] That litigation is related to the divorce of Sonya Dakar ("Sonya") (Case No. 2:12-bk-25615-NB) and Israel Dakar ("Israel"). The divorce also has embroiled Sonya's and Israel's children, including two of

---

[1] *See Application* (SDI dkt. 106), *Supplemental Brief* (SDI dkt. 177), *and supporting documents* (SDI dkt. 160, 176, 181). Unless the context suggests otherwise, references to a "chapter" or "section" ("§") refer to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure ("FRBP"), Federal Rules of Civil Procedure ("FRCP"), Federal Rules of Evidence ("FRE"), or Local Bankruptcy Rules ("LBR"), and other terms have the meanings provided in the Code and the Rules.

-1-

their daughters, Michal ("Mimi") and Daniella ("Donna") Dakar.

Israel objects that Enterprise has conflicts of interest.[2]  He argues that, if it is hired to argue adverse to him, then it will also be adverse to other creditors or to the debtors' bankruptcy estates, and therefore is disqualified.  If Israel is correct then the debtors will lose <u>by default</u> in the Constructive Trust Litigation because they will be unable to employ counsel to argue against Israel.

The principal issue is whether debtors in possession ("DIPs") and their professionals can take positions that favor one set of stakeholders over other stakeholders.  They can.  In fact one of their essential duties is to distribute assets and it would be impossible to administer a bankruptcy estate without taking positions regarding who should receive which assets.  Therefore Israel's argument fails and he cannot force the debtors to lose by default.

Israel's alternative argument is that Enterprise would have a conflict if it continues to represent not only SDI and Hazlaha but also Mimi and Donna.  Admittedly the involvement of insiders is potentially troubling.  The debtors might be unduly influenced to favor Mimi and Donna at the expense of other stakeholders.  More generally, insider interests are pervasive in these divorce-related bankruptcy cases.  The debtors might be unduly influenced to favor Sonya, or disfavor Israel, or otherwise favor or disfavor insiders at the expense of non-insiders.  All of these things create <u>potential</u> conflicts of interest.

But potential conflicts are not automatically disqualifying.  On the present record the potential conflicts are insufficient to disqualify Enterprise.

The only significant effects of accepting Israel's alternative argument would be to deprive the debtors of counsel of their choice, and increase their expenses by forcing them to hire separate counsel so as not to lose by default, instead of splitting the cost equally with Mimi and Donna.  That would increase the debtors' legal bill for the

---

[2] *See* Objection (SDI dkt. 112), *Supplemental Declaration* (SDI dkt. 186), *and Evidentiary Objections* (SDI dkt. 187).

Constructive Trust Litigation. Non-insiders would not benefit at all, because the Constructive Trust Litigation would still have to be litigated and the arguments would be the same. The only beneficiary would be Israel, who would gain leverage by increasing his adversaries' legal expenses.

Israel's objections are overruled. SDI and Hazlaha will be authorized to employ Enterprise by a separate order.

## I.    FACTUAL BACKGROUND

The divorce-related issues pervade these bankruptcy cases. Israel and Sonya, as well as other family members including Mimi and Donna, all assert claims to direct or indirect ownership of various assets (the "Disputed Assets"). The Disputed Assets include the equity ownership in SDI and Hazlaha, or assets that at one time or another have been held by those entities.

Israel argues in the Constructive Trust Litigation that, despite his and Sonya's voluntary transfer of certain Disputed Assets to Mimi, Donna and his other children, they actually only intended to transfer legal title while retaining the real ownership for the benefit of the marital community. Sonya disagrees. She asserts that she and Israel really did intend to transfer those assets, and in the Constructive Trust litigation she supports Mimi, Donna and the other children, as do SDI (controlled by Sonya) and Hazlaha (controlled, at least in part, by Mimi).

Israel has prevailed at the trial court. But the trial court's rulings are now on appeal.

## II.    PROCEDURAL BACKGROUND

On May 1, 2011 (the "Petition Date") the debtors filed their voluntary chapter 11 bankruptcy petitions. The non-insider claims are a fraction of the assets at issue, and on the present record all of the related debtors appear to be very solvent.[3]

---

[3] SDI's bankruptcy schedules and statement of financial affairs ("SOFA") reflect historical income of well over $1 million per year as against approximately $75,000 in priority tax debt and $50,000 in general unsecured claims (not including any estimate for Israel's unliquidated, disputed and contingent claims). *SDI Schedules & SOFA* (SDI dkt. 32-34). Hazlaha's bankruptcy schedules and SOFA reflect historical income of over $300,000 per year and real property valued at $5,800,000 as against general unsecured claims of approximately $9,000 (again, not including

In prior rulings the automatic stay has been modified to permit the divorce-related matters to be litigated (including certain determinations as to ownership, but without enforcing judgments against assets of the bankruptcy estate). In order to be able to participate in that litigation the debtors have to employ counsel.

The application to employ Enterprise has come on for hearing a number of times. Although many of those hearings were continued for procedural reasons or were consumed with other motions, all parties in interest have had ample opportunity to assert their positions.[4]

### III. DISCUSSION

No party in interest has cited any decision that addresses the precise issues. The disputes boil down to how general principles should apply to the particular circumstances of these cases.

#### A. Israel's Principal Argument

Israel argues:

> If the appeal [by the debtors in the Constructive Trust Litigation] is successful it will <u>deprive the bankruptcy estate of the property interests and assets to pay creditors</u>. This is diametrically different than the Debtor's bankruptcy estate and creditor's interests which

---

Israel's claims). *Hazlaha Schedules & SOFA* (dkt. 24-25). Sonya's bankruptcy schedules and SOFA reflect an interest in real property valued at $900,000 plus 100% ownership of SDI and substantial interests in Global Greenworld, LLC and Mindys Cosmetics, Inc. ("Mindys") plus valuable trademarks as well as claims against Israel (and others) as against priority claims estimated at $60,000 (not including certain disputed tax claims in an unknown dollar amount) and general unsecured claims estimated at under $1.4 million (again, not including Israel's claims). *Sonya Schedules & SOFA* (dkt. 1 & 47). Mindys allegedly has assets of over $7 million as against known debts of $3 million. *Mindys Schedules & SOFA* (Case No. 2:12-bk-45619-NB, dkt. 26). Although the parties disagree as to the relative values of the trademarks, SDI's business, and the other businesses, they do not dispute that these things in the aggregate are very valuable. Israel has cautioned against presuming that the debtors necessarily are solvent, but to date he has not attempted to establish insolvency.

[4] The Court's records show that hearings were set for October 3, 11 and 23, 2012, November 1, 13 and 27, 2012 and December 3, 2012. The hearings were continued because, among other things, at one point the parties agreed to a voluntary "freeze" of all of their disputes and the Court sustained Israel's objection that the initial notice of the employment application had not been given properly to creditors. In addition, at those hearings some issues were resolved that are not addressed in this Memorandum Decision, including that if there were any conflicts of interest between Enterprise and the bankruptcy estates then the purported conflict waiver would be ineffective because a DIP cannot waive conflicts on behalf of creditors and other parties in interest. *See Objection* (SDI dkt. 112) at 15:22-17:3 (citing cases).

Sonya initially joined in the application by the other debtors to employ Enterprise, but she has withdrawn that application and has stated that "she will now be represented by Dennis E. Braun, Esq. in connection with the state court litigation." *Statement of Disinterestedness* (SDI dkt. 160) at para. 3. No employment application has been filed yet for that representation.

are to have the State Court decision sustained.  [Enterprise] cannot represent both sides on this important issue.  [*Objection* (SDI dkt. 112) at 6:22-7:3, emphasis added.]

**B.    Analysis**

Israel conflates how to "divide the pie" with "shrinking the pie."  The debtors and Enterprise propose to do the former, not the latter.  That is perfectly acceptable for a bankruptcy trustee or DIP to do.

In these bankruptcy cases, a hypothetical example may best illustrate the "pie" that Enterprise seeks to divide.  If, for example, the estate of one of the debtors currently asserts interests in three pieces of property, the pie consists of those three properties.  If the state appellate court determines that two pieces of property in fact belong to Mimi and Donna, then those two pieces of the pie are divided and distributed to Mimi and Donna while the remaining property is distributed to other stakeholders.  However, if the appellate court determines that Mimi and Donna do not have any interest in the two properties, then all three properties are distributed to the remaining stakeholders.  Either way, the pie is the same size and is simply divided or distributed differently based on the state court judgment.

Israel argues that a ruling in favor of Mimi or Donna would be different, because it would not simply <u>divide</u> the bankruptcy estate but would <u>decrease</u> what assets are <u>within</u> the bankruptcy estate.  That is a distinction without a difference:  the whole point of a bankruptcy case is to distribute assets to stakeholders, which inevitably <u>decreases</u> the assets remaining in the bankruptcy estate for other stakeholders.  There is nothing wrong with that.[5]

To cite just a few other examples of how it is proper to "divide the pie," it is

---

[5] This discussion recognizes that conceivably the bankruptcy estates of SDI, Hazlaha and Sonya <u>could</u> be left with insufficient assets to pay their creditors in full.  But such unequal distributions often occur in bankruptcy (*e.g.,* when a secured creditor is granted relief from the automatic stay and unsecured creditors receive little or nothing).  In addition, these are only possibilities, and if the bankruptcy estates were insolvent then that might give rise to other claims against Mimi, Donna or others, which ultimately could well result in recovery of assets and full payment to all creditors.  *See, e.g.,* 11 U.S.C. 544, 548.  The broader point is that it is perfectly permissible for the DIP to take a position on how assets should be distributed, even if that results in one group receiving less than full payment, and in this case there is the added likelihood that creditors will be paid in full.

perfectly acceptable and frequently necessary for a trustee or DIP and their counsel to litigate (a) against one class and in favor of another (*e.g.,* against the holders of unperfected security interests, for the benefit of general unsecured creditors), (b) against some creditors and in favor of others in the same class (*e.g.,* against unsecured creditors who have received preferential transfers), (c) against majorities of most classes of creditors and in favor of the debtor or its equity holders (*e.g.,* "cramdown"), or (d) in favor of enriching the debtor at the expense of all creditors (*e.g.,* exemptions). In fact, the Bankruptcy Code could not function unless the trustee or DIP could litigate how to divide the limited pie, which inevitably favors some stakeholders at the expense of others.

### C. **Statutory Provisions**

A close reading of the Bankruptcy Code shows that it makes exactly these distinctions. Section 327 provides, in part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an <u>interest adverse to the estate</u>, and that are <u>disinterested</u> persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>
> * * *
>
> (c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an <u>actual</u> conflict of interest.
>
> * * *
>
> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any <u>interest adverse to the debtor</u> or to the estate with respect to the matter on which such attorney is to be employed. [11 U.S.C. § 327, emphasis added]

Section 101(14) provides, in full:

> (14) The term 'disinterested person' means a person that –
>
> (A) is not a <u>creditor</u>, an equity security holder, or an insider;

-6-

>(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
>(C) does not have an <u>interest materially adverse to the interests of the estate</u> <u>or of any class of creditors or equity security holders</u>, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, <u>or for any other reason</u>. [11 U.S.C. § 101(14), emphasis added.]

The emphasized language distinguishes between (1) interests that are adverse to "the estate," which is not permissible, and (2) interests that may be adverse in some sense to a class of creditors or equity security holders but that are not "materially" adverse interests. Some examples will illustrate.

### (1) <u>Adverse to the estate</u>

If proposed counsel were *personally* adverse to the estate then that would disqualify such counsel from employment. *See In re Triple Star Welding, Inc.,* 324 B.R. 778, 795 (9th Cir. BAP 2005) ("'facially plausible' preference claim [against proposed counsel] … must be resolved before proposed counsel can be employed (or compensated)"), *distinguished, In re AFI Holding, Inc.*, 355 B.R. 139 (9th Cir. BAP 2006), *aff'd,* 530 F.3d 832 (9th Cir. 2008). Other examples, from the statute itself (11 U.S.C. 101(14)(A)), are that "a person who is a <u>creditor</u>, <u>equity security holder</u> or <u>insider</u> is [presumed to be] incapable of the impartial judgment required of a professional in the conduct of a case under the [Bankruptcy] Code." 3 *Collier on Bankruptcy* ¶ 327.04[2][a][C] pp. 327-31 to 327-32 (17th ed., Rev. 3/2011, Resnick & Summer eds.) ("*Collier*") (emphasis added).

### (2) <u>"Materially" Adverse to Classes</u>

As noted above, general bankruptcy counsel litigate against creditors and others all the time, so that cannot be what the statute means by a "materially" adverse interest to classes of creditors or equity holders. *See generally Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993) (the trustee could hire special counsel to sue creditor, notwithstanding creditor's arguments that suing him would be adverse to the trustee's duties as "the fiduciary representative of all creditors").

So what would be a "materially" adverse interest to a class of creditors?  If proposed counsel had represented a creditor whom the bankruptcy estate might sue, that could be materially adverse to other classes of creditors because proposed counsel's investigation and prosecution of any action might be constrained by the duty of loyalty to the former client or by the attorney-client privilege.

These are just examples.  But they illustrate that Congress had something more in mind than simply taking positions contrary to creditors when it distinguished between interests adverse to the "estate" and interests "materially" adverse to creditors or equity security holders.

Israel has not established that it is impermissible for SDI and Hazlaha to employ Enterprise to advocate for the position that the debtors believe is right.  Enterprise is not disqualified simply because those positions happen to be adverse to some stakeholders (principally Israel) and in favor of others (including Mimi and Donna).

### D.     Israel's Alternative Argument

Israel objects that not only will Enterprise represent SDI and Hazlaha, it will also simultaneously represent Mimi and Donna.  As noted above, it is true that the involvement of insiders is potentially troubling because the debtors might be unduly influenced to favor Mimi and Donna, or Sonya, or disfavor Israel, all at the expense of other stakeholders.  That creates <u>potential</u> conflicts of interest.  But in the circumstances of this case that is insufficient to disqualify Enterprise for two reasons.

#### 1.     Simultaneous Representation of Persons Who Seek the Same Result is Generally Permissible

Mimi and Donna seek distributions of assets in which the estates may have an interest.  The estates, who are represented by general bankruptcy counsel (different from Enterprise), agree that the right result is to distribute those assets to Mimi and Donna rather than Israel (or others).  Therefore the estates agree with Mimi and Donna and there is no conflict.

If an actual conflict develops, or if there is a sufficiently troubling potential conflict

of interest, then it may be necessary for those various parties to retain separate counsel.  But no such actual or potential conflict has been established at present.  *See generally In re Marvel Entm't Group, Inc.,* 140 F.3d 463, 476 (3d Cir. 1998) ((1) section 327 imposes a per se disqualification of any professional who has an actual conflict of interest; (2) the court may, within its discretion, disqualify a professional who has a potential conflict of interest; and (3) the court may not disqualify a professional solely on the basis of an appearance of conflict).

### 2. Potential Conflicts Would Disqualify General Counsel, But Enterprise Will Not Be General Counsel

General bankruptcy counsel would have to investigate whether to agree with Mimi and Donna (as SDI and Hazlaha have decided to do) or disagree with them (as Israel wants the debtors to do).  General counsel could not simultaneously investigate Mimi and Donna and represent Mimi and Donna.  But SDI and Hazlaha do not seek to employ Enterprise as general counsel.

Israel argues that Enterprise cannot be employed as "special counsel" under subsection (e) of Section 327 because that subsection is only applicable to counsel who "<u>has</u> represented the debtor" prepetition, and SDI and Hazlaha do not claim that Enterprise represented them prepetition.  11 U.S.C. § 327(e) (emphasis added).  The alternative is for Enterprise to be employed under Section 327(a), in which event it must be a "disinterested person."  *Compare* 11 U.S.C. § 327(a) (incorporating by reference the "disinterested person" requirement of § 101(14)) *with* § 327(e) (no such incorporation).

Israel may be correct.  There is certainly substantial authority that Section 327(e) does not apply in the present circumstances.  *See* 3 *Collier* ¶ 327.04[9][b] pp. 327-51 to 327-52 (the "majority" approach "imposes an express requirement of prior representation of the debtor").  *But cf. In re Covenant Fin. Group of Am., Inc.,* 243 B.R. 450, 455 & n. 8 (Bankr. N.D. Ala. 1999) (asserting that "[m]ost courts" reach the opposite conclusion, and citing cases).

1    But Enterprise still can be employed for a limited purpose. The Bankruptcy
2 Appellate Panel of the Ninth Circuit (the "BAP") has held that special counsel can be
3 employed even when such counsel has <u>not</u> represented the debtor prepetition. *See In*
4 *re Fondiller*, 15 B.R. 890, 892 (9th Cir. BAP 1981) (emphasis added), *appeal dism.,* 707
5 F.2d 441 (9th Cir. 1983).

6    *Fondiller* has been interpreted as authorizing employment under subsection (e)
7 of Section 327. *See, e.g., Covenant,* 343 B.R. at 455 n. 8. But the precise holding
8 appears to be that special counsel can be employed under subsection (a) of Section
9 327 because any "omission" in Section 327(e) does not limit the general authority in
10 Section 327(a). *See Fondiller,* 15 B.R. at 891-92 (interpreting § 327(a) by comparison
11 with §§ 327(c) and (e)).

12    In any event, *Fondiller* held that when counsel is only employed to perform
13 limited services, then an interest "adverse to the estate" means "an adverse interest
14 <u>relating to the services which are to be performed by that attorney</u>." *Fondiller*, 15 B.R.
15 at 892.[6] In this case these is no adverse interest relating to the Constructive Trust
16 Litigation because SDI and Hazlaha are in agreement with Mimi and Donna, so SDI and
17 Hazlaha can seek to employ Enterprise as special counsel to handle that litigation.

18    The difference between retaining general counsel and special counsel is not
19 academic. In *Fondiller*, the BAP affirmed the employment of a law firm as special
20 counsel to investigate and recover allegedly concealed or fraudulent conveyed assets.
21 That law firm had represented the largest creditor of the bankruptcy estate prepetition
22 and sought to represent the bankruptcy estate without "sever[ing]" its relationship with
23 that creditor – *i.e.,* special counsel for the debtor in that case would continue to
24 represent the creditor seeking the largest distribution out of the "pie." *Id.* In interpreting
25 the statute the BAP stated:

26    [T]here exists a potential for conflict if an attorney represents both a

---

[6] In addition, "[w]hile creditors are specifically named as 'not disinterested' by § 101(13)(A) [now renumbered § 101(14)], attorneys for creditors are not" – in other words, attorneys for creditors are not *per se* disqualified, so assuming for the sake of discussion that Mimi and Donna are creditors, that would not disqualify Enterprise. *Id.,* 15 B.R. at 891.

-10-

>creditor and the trustee as <u>general</u> counsel.  It should be borne in mind that general counsel for the trustee, in order to accomplish a maximum distribution to creditors, usually must perform services that are adverse to certain individual creditors.  For example, creditors' claims should be reviewed to determine which should be disputed, or an investigation of pre-bankruptcy transactions between the debtor and individual creditors might be conducted for the purpose of determining whether a preference has occurred.  An attorney representing the trustee as general counsel would be required to give legal advice and to proceed with appropriate litigation in connection with these matters.  Any number of possible conflicts can be envisioned.  The foregoing reasoning, however, does not apply to those situations in which an attorney's services are limited to a narrow field for a specific purpose. [*Fondiller*, 15 B.R. at 892, emphasis added.]

As in *Fondiller*, the proposed employment of Enterprise is limited to a narrow field (the Constructive Trust Litigation) for a specific purpose (prosecuting that matter to final judgment or disposition).  Enterprise is not simultaneously in the position of being adverse to the same parties it will be representing, because SDI and Hazlaha seek the same outcome as Mimi and Donna.  The simultaneous representation of all four of those parties does not disqualify Enterprise.[7]

### E.  **Further support for employment of Enterprise**

The foregoing analysis is reinforced by the analogous provisions of Section 327(c).  That section provides that a professional in a chapter 11 case "is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an <u>actual</u> conflict of interest."  11 U.S.C. 327(c) (emphasis added).

The foregoing analysis is further reinforced by practical considerations.  If the

---

[7] At least theoretically, it would be possible for Enterprise to represent Mimi and Donna and for SDI and Hazlaha to be retain separate counsel, if only to say "me too" on each issue in the Constructive Trust Litigation. At oral argument Enterprise and the general bankruptcy counsel for SDI and Hazlaha argued that it would be inefficient if not unworkable to retain separate counsel. Those arguments were not supported by evidence or persuasive examples, but it may be difficult to provide examples without encroaching on issues of strategy and attorney-client privilege. In any event, Israel has not established a sufficient basis to override the strong policy of permitting parties to choose their own counsel. Therefore, Enterprise can represent SDI and Hazlaha in the Constructive Trust Litigation while simultaneously representing Mimi and Donna in taking the same positions in the same litigation.

-11-

Court were to accept Israel's principal argument then the debtors could not hire any attorneys to litigate in the divorce-related proceedings because any such attorneys would be deemed to have a disqualifying conflict of interest (even if they worked at no cost to the estate).

In addition, if SDI and Hazlaha were determined by the state courts to be indispensible parties, then Mimi's and Donna's rights might be undermined as well.  In other words, as noted at the start of this Memorandum Decision, if Israel's view of the statute is correct then some or all of the parties adverse to him would be forced to lose by default.

Israel would be only too happy with that outcome, and so would anyone else competing with Mimi and Donna for part of the pie.  But Congress cannot have intended for the Courts to interpret the Bankruptcy Code in a way that forces parties to lose by default in such situations.

To illustrate, suppose that Enterprise litigates the pending appeals to a final judgment *in favor* of its clients (Mimi and others) and against other parties (Israel and others).  In that scenario, that is the legally proper result by definition (because it is a final judgment) and Israel and Sonya's creditors never had any legitimate claim to be paid out of the disputed assets, so they have not been deprived of anything that they should have.  It would be antithetical to the principles of the Bankruptcy Code if, in such a situation, the debtors, Mimi and others were forced to lose their meritorious claims by default.

Conversely, if a final judgment is *against* the position advocated by Enterprise for its clients, then Israel, Sonya and Sonya's creditors will receive a larger share of the pie and Mimi and others will receive less.  That, too, will be acceptable.

The point is that the Bankruptcy Code should be interpreted to permit parties to litigate the merits, not lose by default.  That supports the foregoing interpretation of the statute.

**F.    Summary, and a caveat**

    **1.    Employment authorization**

For all of these reasons, SDI and Hazlaha may employ Enterprise as special counsel under Section 327(a) to undertake the litigation described in the application. Israel's objections are overruled.

    **2.    Caveat**

A separate question is who should bear the financial burden of that litigation. It is one thing for the debtors to have a legitimate interest in determining how to divide the pie. It is another thing for them to bear the cost of litigating on behalf of other parties such as Mimi and Donna, if the latter have the funds, the standing, and the motivation to protect their own interests.

The application papers propose that each of the four represented parties (SDI, Hazlaha, Mimi and Donna) bear 25% of the fees and costs of Enterprise. *See Statement of Disinterestedness* (dkt. 176) at Sec. 3. But it appears that the bankruptcy estate might be able, at substantially less cost, to join in whatever Mimi and Donna argue.

All of that said, there is no evidence in the record regarding the relative abilities of Mimi and Donna to pay for the litigation, or how much the litigation might cost. Nor has any party in interest objected on this precise ground.

In these circumstances the current proposed allocation of fees and costs is approved, but the Court may determine at a later date to cap the dollar amount that the bankruptcy estates can spend on this litigation, at least if those fees and costs become substantial relative to the benefits to the bankruptcy estates in figuring out how to divide the pie. As always, the debtors and Enterprise should exercise their judgment in deciding how much to spend on any given issue.

**IV.    CONCLUSION**

For the foregoing reasons, and for all of the reasons stated on the record at the hearings on these matters, SDI and Hazlaha will be authorized by separate order to

employ Enterprise.  Enterprise or counsel for SDI and Hazlaha should submit a proposed order authorizing that employment "for the reasons stated in, and subject to the conditions set forth in," this Memorandum Decision.

###

DATED: December 14, 2012

_____
United States Bankruptcy Judge

-14-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **AMENDED MEMORANDUM DECISION REGARDING EMPLOYMENT OF ENTERPRISE COUNSEL GROUP ALC** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** – Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*)12/14/12, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Russell Clementson    russell.clementson@usdoj.gov
- Brian L Davidoff    bdavidoff@greenbergglusker.com, jreinglass@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Jerome Bennett Friedman    jfriedman@jbflawfirm.com, msobkowiak@jbflawfirm.com;jmartinez@jbflawfirm.com
- Elizabeth Jiang    ejiang@sulmeyerlaw.com, elizabeth.z.jiang@gmail.com
- Michael S Kogan    mkogan@koganlawfirm.com
- C John M Melissinos    jmelissinos@greenbergglusker.com, jreinglass@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Avi Muhtar    amuhtar@foxrothschild.com, thalvorson@foxrothschild.com;amuhtar@ecf.inforuptcy.com;jgutke@foxrothschild.com
- Dean G Rallis    drallis@sulmeyerlaw.com
- Claire E Shin    cshin@greenbergglusker.com, jreinglass@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Michael G Spector    mgspector@aol.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Lee G Werner    leegwerner@gmail.com

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

**Debtor:**
Attn: Michal Dakar
Sonya D. International, Inc.
9975 Santa Monica Blvd
Beverly Hills, CA 90212

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

☐ Service information continued on attached page